**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abubakar Hussein Ahmed, | No. CV-14-01626-PHX-MHB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona State University, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's pleading entitled, "motion to vacate [judgment]" pursuant to Rule 60 of the Federal Rules of Civil Procedure (Doc. 21). In his motion, Plaintiff requests that the Court vacate the order and judgment issued in this case (Docs. 18, 19) claiming that this Court "should explain and expound how exactly rule 8 works and why exactly plaintiff's complaint doesn't meet with the standard." Plaintiff states that the Court dismissed this matter "without providing a notice or chance to be heard," and "didn't comply with all the other instructions in the mandate ... ."

The Court will recap the procedural background of this case as discussed in this Court's previous December 19, 2016 dismissal Order, before it addresses Plaintiff's motion to vacate.

On July 18, 2014, Plaintiff filed a pro se "Civil Rights Complaint" alleging seven counts for relief against 26 Defendants. In his Complaint, Plaintiff stated the following:

On June 26, 2012, at approximately 2232 hours (10:30 p.m.), it was allegedly reported that plaintiff had committed an incident of Forgery Fraud under A.R.S. Section 13-2002Al; later the offense was changed to one of an attempt to commit forgery. In Arizona, an attempt to commit forgery is a Class 5 felony.

Oddly enough, the incident was reported at the same time it occurred. According to the incident summary, plaintiff attempted to forge an ASU diploma by requesting by e-mail that JFB Desktop Publishing, a California business entity not registered with the Secretary of State of California and not registered with the Arizona Secretary of State, remove the name from a copy of a diploma plaintiff attached to the email, and put plaintiff's name there instead. A charge of Attempted Forgery was pending the result of a search warrant.

It was alleged that plaintiff, at 2327 hours (11:27 p.m.), on June 26, 2012, received an email from JFB Desktop Publishing stating that JFB would need to obtain written authorization from ASU before a diploma could be issued. Plaintiff never received this email on his computer. Allegedly, JFB Desktop Publishing then notified the Registrar's Office at ASU of plaintiff's alleged request. The Registrar's Office at ASU contacted the university's Office of the General Counsel who in turn contacted the ASU Police.

On July 3, 2012, Jodi Prudhomme, Esq., Associate General Counsel at ASU, issued a Cease & Desist letter which was allegedly sent to plaintiff's email address, which plaintiff never received on his computer or any other device he owned. Interestingly enough, this document was not listed among the documents the FBI found during its analysis of plaintiff's computers.

Daniel F. Herrmann contacted plaintiff and asked him to come to the ASU Police Station for an interview. When plaintiff arrived at the ASU Police Station on July 11, 2012, he was interviewed by FBI agent John Chipolsky and Daniel Herrmann.

During the July 11th interview, plaintiff denied having knowledge of JFB Desktop Publishing; plaintiff also denied contacting anyone to have a diploma made showing that he had graduated from ASU. When plaintiff was shown the alleged email exchanges between plaintiff and JFB Desktop Publishing, plaintiff denied involvement in any way with the alleged forgery.

On July 19, 2012, a search warrant was applied for and granted. The Affidavit for Search Warrant executed by defendant Daniel F. Herrmann included an averment that facts concerning Herrmann's training and experience established probable cause to issue the warrant. Herrmann also indicate that he was a Special Deputy United States Marshal.

The Affidavit for Search Warrant does not cite the same statute as the ASU Incident Report; the report cites A.R.S. § 13-2002Al while

the Affidavit for Search Warrant cites A.R.S. § 13-2002.A.2 as the statute that was violated. A.R.S. § 13-2002 A2 provides that a person commits forgery if, with intent to defraud the person knowingly possesses a forged instrument. Upon information and belief, plaintiff was never found to be in possession of a forged instrument. Furthermore, if he was in possession of the diploma, it was not a forgery as it contained the name of an actual graduate of ASU.

The Probable Cause Statement portion of the Affidavit avers that between June 29, 2012 and July 11, 2012, Herrmann learned the following information. However, the Incident Report indicates that Herrmann received a report on June 26, 2012 of the alleged incident; these dates are inconsistent.

Corporal Herrmann indicates in Paragraph 3 of the Probable Cause Statement that he identified plaintiff through law enforcement records and conversations with law enforcement investigators as the user of email address abubakar5500@yahoo.com.

On May 14, 2014, plaintiff requested a local records check through the City of Phoenix Code Enforcement Unit of the Phoenix Police Department; the request included a right index fingerprint. The result of the request stated "[t]his search is of Phoenix Police Department records only." The form also indicates that a search of Phoenix Police Department computer files disclosed no record meeting dissemination criteria for the name and date of birth that were provided.

Clearly, the Phoenix Police Department had no records concerning the name and date of birth of Abubakar Hussein Ahmed nor an email address for him.

On April 18, 2014, plaintiff made a Freedom of Information Act Request to the Federal Bureau of Investigation. The request required plaintiff to send fingerprints to the FBI. The result of this request was a letter indicating "[a] search of the fingerprints provided by this individual has revealed no prior arrest data at the FBI." Therefore, it appears that plaintiff had no record with the FBI. However, the Maricopa County Arizona County Attorney's Dispo Form indicates the 2012 case has FBI No. 280158RD5.

The veracity of Daniel Herrmann's averment in the Probable Cause Statement portion of his Affidavit for Search Warrant as to know how he obtained information regarding plaintiff's DOB, Social Security Number and email address is called into question since neither the Phoenix Police Department nor the FBI had information regarding an arrest or investigation of plaintiff as of 2014.

Later, in his Complaint, Plaintiff stated:

The officers involved in the raid broke windows, broke a glass entrance door and shot the door to a room three (3) times. Damage was done to the residence in the amount of $1573, excluding labor.

Plaintiff was arrested in his home and transported to the Phoenix Police Department where plaintiff's fingerprints and a mug shot were taken. After plaintiff was arrested and taken to a holding facility, fingerprinted and a mug shot taken, plaintiff returned home. On information and belief this was a false arrest as the ASU Incident Report states that no one was taken into custody.

On January 15, 2013, upon information and belief, John Chipolsky of the FBI contacted the Dallas Fort Worth International Airport (DFW) TSA while plaintiff was returning home after a trip to Saudi Arabia for an Islamic religious rite called hajj (pilgrimage to Makkah), advising them to perform a comprehensive search of plaintiff. The search at DFW caused plaintiff to miss his flight to Phoenix.

When plaintiff arrived at Sky Harbor Airport on January 15, 2013, FBI Agent John Chipolsky and a Phoenix detective met plaintiff. The two men talked to plaintiff asking him if he listened to Imam Anwar al Awlaki and other terrorists on Youtube. Chipolsky asked to see the computer that plaintiff had with him. When plaintiff told the two men that he couldn't talk to them without a lawyer being present, the conversation ended.

Plaintiff asserts on information and belief that the conduct of the defendants was based on his race, national origin and religion. When. the FBI visited plaintiff's home without a search warrant November 30th 2011, the FBI agents began talking to plaintiff about his country of origin, when he came to America, when he was naturalized as a citizen of the United States. The agents also asked plaintiff whether he was a citizen on paper only or if he was truly loyal to the U.S. Plaintiff was asked what kind of Islam he practices, what Islamists,x:lo at their temple. On information and belief this conduct was engaged in by the FBI agent in violation of plaintiff's rights under the Fourth Amendment to the U.S. Constitution and by the Phoenix Police Department officers in violation of the Fourteenth Amendment.

Although Corporal Hermarui procured the search warrant on July 19, 2012, he luxuriously waited until the next day, July 20, 2012 to execute it which would be the first day of Ramadan, the day on which 1.8 million Muslims around the world start fasting for a month. The agents/men offered plaintiff water to drink; plaintiff refused the water on the basis that he can't drink during the daytime during Ramadan.

The Court, having reviewed Plaintiff's submissions, granted Plaintiff's application to proceed *in forma pauperis*. The Court, however, found that Plaintiff's Complaint failed to state a specific cause of action against any of the 26 named Defendants, and comply with Rule 8 of the Federal Rules of Civil

Procedure. As such, the Court dismissed the Complaint with leave to amend. In so doing, the Court advised Plaintiff as to this Court's duty with respect to the screening of *in forma pauperis* cases, and instructed him regarding the federal pleading requirements as set forth in the Federal Rules of Civil Procedure and federal case law.

On September 29, 2014, Plaintiff filed his Amended Complaint. This time, Plaintiff alleged 62 causes of action against 40 Defendants in his 90-page document. In his Amended Complaint, Plaintiff stated the following:

> On June 26, 2012, at approximately 2232 hours (10:30 p.m.), it was allegedly reported that Plaintiff had committed an incident of Forgery Fraud under A.R.S. Section 13-2002Al; later the offense was changed to one of an attempt to commit forgery. In Arizona, an attempt to commit forgery is a Class 5 felony. Oddly enough the incident was reported at the same minute it occurred. According to the incident summary, Plaintiff attempted to forge an ASU diploma by requesting by e-mail that JFB Desktop Publishing, a California business entity not registered with the Secretary of State of California and not registered with the Arizona Secretary of State, remove the name from a copy of a diploma plaintiff attached to the email, and put Plaintiff's name there instead. A charge of Attempted Forgery was pending the result of a search/seize warrant.
>
> It was alleged that Plaintiff, at 2327 hours (11:27 p.m.), on June 26, 2012, received an email from JFB Desktop Publishing stating that JFB would need to obtain written authorization from ASU before a diploma could be issued. Plaintiff never received this email on his computer. Allegedly, JFB Desktop Publishing then notified the Registrar's Office at ASU of Plaintiff's alleged request. The Registrar's Office at ASU contacted the University's Office of the General Counsel who in turn contacted the ASU Police.
>
> On July 3, 2012, Jodi Prudhomme, Esq., Associate General Counsel at ASU, issued a Cease & Desist letter which was allegedly sent to Plaintiff's email address, which Plaintiff never received on his computer or any other device he owned. These documents were not listed among the documents the FBI found during its analysis of Plaintiff's computers.
>
> Daniel F. Hernnann contacted Plaintiff and asked him to come to the ASU Police Station for an interview. When Plaintiff arrived at the ASU Police Station on July 11, 2012, he was interviewed by FBI agent John Chipolsky and Daniel Hernnann.
>
> During the July 11th interview, Plaintiff denied having knowledge of JFB Desktop Publishing; Plaintiff also denied contacting anyone to have a diploma made showing that he had graduated from ASU. When Plaintiff was shown the alleged email exchanges between Plaintiff and JFB Desktop Publishing, Plaintiff denied involvement in any way with the alleged

forgery.

On July 19, 2012, a search/seize warrant was applied for and granted in the name of the State of Arizona pursuant to A.R.S. 13-3911 et. Seq. The Affidavit for Search Warrant executed by Defendant Daniel F. Hernnann included an averment that facts concerning Hernnann's training and experience established probable cause to issue the warrant. Hernnann also indicated that he was a Special Deputy United States Marshal.

The Affidavit for Search Warrant does not cite the same statute as the ASU Incident Report; the report cites A.R.S. § 13-2002Al while the Affidavit for Search Warrant cites A.R.S. § 13-2002.A.2 as the statute that was violated. A.R.S. § 13-2002 A2 provides that a person commits forgery if, with intent to defraud the person knowingly possesses a forged instrument. Upon information and belief, Plaintiff was never found to be in possession of a forged instrument. Even after the execution of the search warrant.

The Probable Cause Statement portion of the Affidavit avers that between June 29, 2012 and July 11, 2012, Herrmann learned the following information. However, in paragraph 7 of the affidavit he averred that On July 17, 2012 investigators conducted a spot check of the parking of 2419 in phoenix and saw a 2001 Honda, with Arizona license AVR1616, registered to Abubakar Ahmed and that the investigators also verified that Abubakar ahmed has internet service in his name at the address.
Further the Incident Report indicates that Herrmann himself reported on June 26, 2012 of the alleged incident; these dates are inconsistent. Pursuant to Arizona constitution Article 6 Section 26 before entering office each Judge takes an oath to support the U.S. constitution. but strangely enough and in violation of that oath Judge Barbara Hamner decided to approve and grant a search warrant in the face of an affidavit that contains internal and external inconsistencies. Besides, the search warrant and it's affidavit was oddly officially filed with the court clerk 21 days after its approval and 20 days after execution.

Pursuant to A.R.S. 13-3918 et. Seq. in order to keep the search warrant and its seizures valid and legal. The search warrant had to be returned to the judge no more than 3 days after the execution thereof. Therefore conveniently Judge Colleet Prem signed the date of the search warrant return to be exactly 3 days after its execution, but oddly enough the filing date of the search warrant return with the court clerk; Michael K. Jeanes; appears to be 26 days after the execution date. Pursuant to the inconsistent dates the truth of Judge Colleet Prem hand written date is suspect.

Moreover the clerk's website displays a chart which suggests that a search warrant may be issued, executed, returned, Clerk scans and dockets public records in as few as two days but no more than 15 days. Additionally, elsewhere on the clerks website suggests that among the functions and responsibilities of court clerk is to be the first stop for intiations of Civil, Criminal etc. Cases, and before the Judge. However the Affadavit, Search warrant, and the return thereof in question, appears to be vice versa. EXHIBIT 14

Based on the foregoing information, inference and belief, Plaintiff alleges the judges engaged in conspiratorial meeting with the officers prior to the

- 6 -

application of the search warrant and acted with deliberate indifference as to whether the affidavit avers factual or fictional statements, defeating the purpose of A.R.S.13-3914 which requires the judge to examine the affadavit, Further that explains why Judge Barbara Hamner approved the Search warrant whose affidavit is repleted with lies, And judge Colleet Prem Doctored the date to cover up its invalidity pursuant to A.R.S. 13-3918 et. Seq.

Furthermore, everything seized on July 20th 2012, by the defendants, at the plaintiff's home, was no more than things that can be found in every occupied home, but nevertheless the foregoing Judges found no problem with the receipt list in spite of the State law pursuant to A.R.S. 13-3919 (B)( 2) which states; Unless the court finds reasonable necessity for the seizure, the warrant prohibits the seizure of any tangible property. See Exhibit 1

Moreover, Detective Hermann averred that he gave a detailed receipt for the property taken, to abubakar ahmed and a supposed roommate DeCarus Thomas on the contrary the receipt which he turned in to the court shows the signature spot of the property giver to be blank.

Besides the search warrant commands Detective Dan Hermann to retain the property in his individual custody or in the custody of Arizona State University Police Department only, pursuant to A.R.S. 13-3920. Nevertheless, the property receipt shows that everything seized was seized by the FBI Agency. This is improper and in violation of the Fourth Amendment to United States Constitution, the FBI did not have a search warrant. Ifthe FBI agency had probable cause to Seize property than the proper course of action would be to apply for a search warrant at the United States District Court pursuant to Federal Rules of Criminal Procedure Rule 41 et. Seq.

Assuming the judge has jurisdiction to inquire into the offense in respect to which the warrant was issued A.R.S. 13-3923 instructs the judge to either annex the affidavits, the search warrant and return, and the inventory, and if he does not have jurisdiction to inquire into the offense in respect to which the warrant was issued, he shall at once file the warrant, and return the affidavits and inventory to the court having jurisdiction to inquire into the offense.

Since neither of the foregoing occurred, this judges should've given a bit of care, by inquiring as to why no charges were brought against the plaintiff herein or instruct the procurer of the search warrant to return the property to the plaintiff.

Understandably, the judges have absolute judicial immunity from liability within their Judicial discretion, but whether is because of the many breached State Statutes, Taking the clerks function (by becoming the first stop for an initial criminal proceeding), conspiring with the other Defendants prior to the application and issuance of the Search Warrant, or going out of Jurisdiction by approving a search for the Federal Burea Agency/agents when it was supposed to be a Federal Court/Judge, Plaintiff claims liability against the judges.

Plaintiff's Amended Complaint continued, stating:

> On September 19, 2014 after making public record request pursuant to A.R.S. 39-121 et. Seq. Phoenix Police Department, Code Enforcement Unit released a mugshot that is supposed to be original on a CD, after careful analysis, plaintiff detected several changes on the facial area of the plaintiff's face, this changes were made specifically to defame the plaintiff, make him look monstrous and communicate a false idea to a 3rd party that the person in the picture is a monster. One change that sticks out is the tooth area which shows only one teeth, even though in reality plaintiff have all his teeth intact.
>
> On January 15, 2013, upon inference and belief, John Chipolsky of the FBI contacted the Dallas Fort Worth International Airport (DFW) TSA while Plaintiff was returning home after a trip to Saudi Arabia for an Islamic religious rite called Hajj (pilgrimage to Makk:ah), advising them to perform a comprehensive search of Plaintiff. The search at DFW caused Plaintiff to miss his flight to Phoenix.
>
> When Plaintiff arrived at Sky Harbor Airport on January 15, 2013, FBI Agent John Chipolsky and a Phoenix Sergeant, who was a part of the swat team on July 20th 2012, met Plaintiff. The two men talked to Plaintiff asking him if he listened to Imam Anwar al Awlaki and other terrorists on Youtube. Chipolsky asked to see the computer that Plaintiff had with him. When Plaintiff told the two men that he couldn't talk to them without a lawyer being present, the conversation ended. At the baggage claim the plaintiff finds one of his bags was ripped opened.
>
> Plaintiff asserts on information and belief that the conduct of the Defendants was based on his race, national origin and religion. When the FBI John Chipolsky and other 10-15 unknown Agents visited Plaintiff s home without a search warrant on November 30th, 2011, the FBI agents began talking to Plaintiff about his country of origin, when he came to America, when he was naturalized as a citizen of the United States. The agents also asked Plaintiff, whether he was a citizen on paper only or if he was truly loyal to the U.S. Plaintiff was asked what kind of Islam he practices, what Islamists do at their temple. On information and belief, this conduct was engaged in by the FBI agent in violation of Plaintiff s rights under the Fourth Amendment to the U.S. Constitution.
>
> Besides, as some agents were engaged in the biasely and racially motivated interrogative harassment, the other agents were going throughout the home, taking notes.
>
> On information and belief the The foregoing behavior of the FBI Agents was due to the improper training they received in Quantico, VA, with the controversial anti-Islam material which were

purportedly removed on or around January, 15th 2012 due to a whistle blower agent that triggered Human rights Groups, media and congress pressure. When asked, by Senator Al Franken on December 14th 2011, has the FBI Issued a clear and unequivocal apology to the Muslim American community for the bigoted and anti-Muslim statements found in those material?, former Director Robert Mueller then Director of the FBI Stated not only we apologized to the Muslim community we also explained to them, the process we're undergoing to address the issue. However mere apology is not enough in this case due to the fact that the anti islam doctrine caused Plaintiff injuries that cannot be remedied unless equity and law is justly applied to the fullest extent.

Further plaintiff alleges, Mr. Muealler retreated his agents from harassing plaintiff and other muslims lacking any reason, to attacking plaintiff and possibly other muslims with falsified reasons. As contrasted herein.

According to USA Today (See Exhibit 11)

The FBI has pulled more than 700 documents and 300 presentations that stereotyped Islam or were factually inaccurate.

Among the anti islam documents is a chart which depicts to Muslims as people who start out their lives violent and adhere to violence as their devotion increases. But Christians and Jews lower their violent behavior as their devotion increases. See Exhibit 12

Although Defendants procured the search warrant on July 19, 2012, they luxuriously waited until the next day, July 20, 2012 to execute it which would be the first day of Ramadan, the day on which 1.8 billion Muslims around the world start fasting for a month. The agents/men offered Plaintiff water to drink; Plaintiff refused the water on the basis that he can't drink during the daytime for the duration of Ramadan. See Exhibit 13

Besides even though defendants had a period of more than 15 hours to serve the search warrant on any day, they chose just the time which plaintiff attends a weekly 1 hour Islamic sermon at the local Mosque.

On inference and belief, the foregoing was a purposeful act to impede plaintiff from an activity protected by the first Amendment to the United States Constitution.

On August, 24 2012, Defendants submitted a Falsified charge of forgery felony to the Maricopa County Attorney against this plaintiff; Stating that a forgery crime took place on August, 1st 2012 contradicting the falsified ASU Police incident report, which states the crime was committed on June 26th 2012; the County Attorney did not file any charges against the Plaintiff herein. Later on, Defendants ferociously, submitted a 2nd blatantly false Charge to the prosecutor; claiming that Plaintiff herein committed a forgery felony on December, 28 2012 even though plaintiff was not in the

> United States on that day. See Exhibit 5
>
> The defendants submitted a CD containing web browsing history, as evidence, and alleged that the plaintiff searched for a fake diploma online. But the plaintiff could not have been the one browsing for fake diploma on August 1st 2012 or December 28th 2012. especially, provided that the plaintiff didn't have the computer in his possession on those dates. The computer was seized by the defendants on july 20th 2012 and was never returned to plaintiff to date. ...
>
> Plaintiff asserts, if defendants had probable cause than there would be a definite prosecution against the plaintiff, but since probable cause existed neither before nor after the procurement and execution of the search warrant. The Defendants were trying to exculpate themselves from the foregoing Statutory law by any means possible. And even if its to charge the plaintiff through fraudulent means which they unsuccessfully exhausted.
>
> Though nevertheless, defendants treated themselves with candonation since they are the gate keepers of criminal charges.
>
> After the Defendants engaged in the conduct described herein, the Maricopa County Attorney declined to prosecute and no charges were officially filed against Plaintiff Prosecutor James E Blair Jr, instructed defendants to release all property as to this Plaintiff than defendant. The Plaintiff s computer and other illegally confiscated properties is still purportedly in the custody of the FBI in defiance of the County Attorney's instruction.

Again, instructing Plaintiff as to this Court's duty with respect to the screening of *in forma pauperis* cases, as well as, the pleading requirements set forth in the Federal Rules of Civil Procedure and federal case law, the Court found, "that once again, [Plaintiff's complaint] fails to satisfy the federal pleading requirements." The Court stated that the complaint failed to provide a "short and plain statement" of his claims. The Court found that the pleading contained a narrative account of incidents purportedly underlying this action, large portions of which are meandering and irrelevant. The Court stated that the Amended Complaint failed to provide sufficient notice to Defendants of how each individual Defendant allegedly violated Plaintiff's rights.

For example, Plaintiff stated under "Count 1," "Plaintiff repeats and re-alleges and incorporates the allegations in each and every paragraph contained

herein as if copied in extenso, with the same force and effect against each and every Defendant herein, for direct and/or indirect participation and/or action and/or inaction and/or encouragement and/or condonation and/or acquiescence and/or negligence and/or gross negligence of the violation in this count. Further, Plaintiff alleges that his rights, privileges or immunities under 42 U.S.C. § 2000d et. Seq. were violated due to his race, skin color, religion and national origin. Plaintiff was deprived of the law enforcement services, after the conduct described herein, Defendants treated each other with a total condonations. No one was charged pursuant to A.R.S. 13-3924. ... Therefore Plaintiff claims liability against each and every state Divisions/Departments whose employee was involved, further Plaintiff claims liability against the same Divisions/Departments for the actions of the federal employees, because the federal employees went out of their Jurisdictions and duties by oddly pretexting that they are enforcing state laws, but nevertheless state actors didn't reject the support of the federal employees, they instead encouraged, acquiesced and even conspired together to deprive Plai ntiff rights protected under laws and constitution under false pretenses. Further Plaintiff doesn't waive his rights and liability against the federal agents pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). In their individual capacity." Plaintiff continued to address each of his 62 causes of action in this same fashion.

Thus, after having (1) screened Plaintiff's original Complaint and including a description of the federal pleading requirements coupled with this Court's duty with respect to the screening of *in forma pauperis* cases, (2) allowed Plaintiff the opportunity to file an Amended Complaint, (3) screened the Amended Complaint and, again, instructing Plaintiff as to this Court's duty with respect to the screening of *in forma pauperis* cases, as well as, the pleading requirements set forth in the Federal Rules of Civil Procedure and federal case law, and (4) found that Plaintiff

failed to satisfy the federal pleading requirements, failed to provide sufficient notice to Defendants of how each individual Defendant allegedly violated Plaintiff's rights, and failed to provide any plausible claim for relief, the Court dismissed the Amended Complaint in its entirety implicitly finding that it had given Plaintiff adequate opportunity to state a claim and comply with the Federal Rules of Civil Procedure and that the allegations Plaintiff asserted cannot be cured by amendment.

Plaintiff subsequently appealed this Court's Order. The Ninth Circuit, thereafter, remanded this matter back to this Court "to give Ahmed notice of the deficiencies in his claims and an opportunity to file an amended complaint." The Ninth Circuit stated that, "[t]he district court properly found that Ahmed's First Amended Complaint violated Rule 8(a)'s requirement that a pleading shall contain 'a short and plain statement' of the case. However, the district court did not consider less drastic alternatives before dismissing Ahmed's action."

On December 19, 2016, the Court found that having documented the history of this matter, demonstrating that neither of Plaintiff's complaints could possibly be construed as: (1) complying with the federal pleading requirements which were explicitly outlined in the Court's previous two screening orders, and (2) stating a claim for relief against any of the specifically-named Defendants – and in accordance with the Mandate of the Ninth Circuit, ordered that "Plaintiff shall have thirty days from the date of this Order to file an amended complaint. The Clerk of Court is directed to enter a judgment of dismissal without prejudice and without further notice to Plaintiff if Plaintiff fails to file an amended complaint within thirty days of the date of this Order."

Plaintiff failed to file an amended pleading pursuant to this Court's Order and, on January 20, 2017, the Clerk of Court entered Judgment. Over two months later, on March 27, 2017, Plaintiff filed the instant motion to vacate (Doc. 21).

- 12 -

Under Federal Rule of Civil Procedure 60(b), a movant may seek relief from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. See Fed. R. Civ. P. 60(b). Thus, clauses (1) through (5) provide specific reasons for granting relief, while clause (6) requires a showing that the grounds justifying relief are extraordinary; mere dissatisfaction with the court's order or belief that the court is wrong in its decision are not adequate grounds for relief. See Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981).

Again, in his motion, Plaintiff requests that the Court vacate the order and judgment issued in this case (Docs. 18, 19) claiming that this Court "should explain and expound how exactly rule 8 works and why exactly plaintiff's complaint doesn't meet with the standard."

As the procedural history of this case demonstrates, this Court has (1) screened Plaintiff's original Complaint and including a description of the federal pleading requirements coupled with this Court's duty with respect to the screening of *in forma pauperis* cases, (2) allowed Plaintiff the opportunity to file an Amended Complaint, (3) screened the Amended Complaint and, again, instructing Plaintiff as to this Court's duty with respect to the screening of *in forma pauperis* cases, as well as, the pleading requirements set forth in the Federal Rules of Civil Procedure and federal case law, and (4) found that Plaintiff failed to satisfy the

- 13 -

federal pleading requirements, failed to provide sufficient notice to Defendants of how each individual Defendant allegedly violated Plaintiff's rights, and failed to provide any plausible claim for relief. Even after this, the Court has given Plaintiff an additional thirty days to file another amended complaint. Plaintiff, however, failed to comply.

Plaintiff is no different than any other pro se litigant and he has been properly advised of the necessary filing requirements in this case. He has been given opportunities to comply, and has failed to do so. The Court finds that none of the factors identified in Rule 60(b) are present here. Accordingly, Plaintiff's "motion to vacate [judgment]" pursuant to Rule 60 of the Federal Rules of Civil Procedure (Doc. 21) will be denied.

**IT IS ORDERED** denying Plaintiff's "motion to vacate [judgment]" pursuant to Rule 60 of the Federal Rules of Civil Procedure (Doc. 21);

**IT IS FURTHER ORDERED** dismissing this matter in its entirety.

**Dated** this 19th day of November, 2018.

Honorable Stephen M. McNamee
Senior United States District Judge